is case number 4-18-0017, Weaver v. Cleary. Appearing for the appellant is attorney David Cox. And for the appellee is attorney Stanley Freeman. Good morning, gentlemen. Good morning. Mr. Cox, are you ready to proceed? I am, Your Honor. You may. If it pleases the Court. It's a privilege to again appear before the Fourth District and argue a case. I appreciate the opportunity to do so. My name is David Cox. I represent the surviving plaintiff and the appellant in this case. Before I proceed with my substantive argument, which will focus primarily on the restrictive covenant argument, I'd like to make a few prefatory comments regarding the hierarchy of my arguments. The appellant has advanced four arguments in this case. One is that the construction violates the restrictive covenant that applied to pavements addition in the village of Mansfield. The second argument is that the construction was not in compliance with the Mansfield city ordinance or village ordinance. The third argument is the commercial use argument that would violate the residential character and the restrictive covenant in regards to the residential character. And the third is the hydrology or the environmental claim regarding flooding and so forth. Mind you, I stand by all four arguments, but I think there's a hierarchy here that can make our discussion more efficient, subject to where this Court takes me through your questions and inquiry. I think the case can be resolved on the restrictive covenant issue, and that's going to be my argument. Of course, I have indicated that I believe that the novel standard of review applies. To be quite candid, I finished this brief during the tail end of a hospitalization in intensive care, and it's not exactly as concise as I would like for it to be. So in regards to the Mansfield city ordinance argument, I think there's sufficient evidence that this Court could conclude that the construction was not in compliance with the permit requirement of the ordinance, and therefore, under the de novo standard, the Court could enter judgment. But the Court also has a fallback position on the Mansfield city ordinance, and that is that there's at least a dispute of fact as to when construction began and when permits were gained and what process had to be applied, and therefore, perhaps an abuse of discretion standard could apply if the Court decides to remand this to the trial court. The same with the commercial use. I think there's strong circumstantial evidence and indications in the record that the property is set up for commercial use, and the Court could conclude that under the de novo standard. Well, other than seeing motorcycles in the driveway, what is the evidence of commercial use? Well, there's circumstantial evidence. I would suggest, Your Honor, in the record, if you look back, first of all, they operate a motorcycle business. Second, they live in a residential neighborhood in Mansfield, and my client's affidavit indicated that she saw motorcycles and traffic in and around the property. But circumstantially, I think the case can be made. I'm just pausing right there. What does any of that support? I think when you take that in light of the fact that you have a larger structure being built that has a workshop, I think one has to ask oneself, why would they need to convert a two-car garage into an office and build a larger building for residential purposes? So that question is the evidence that they're running a business? Well, it's at least some evidence, or it would at least be a dispute of fact. What strikes me is essentially nothing at all. And that's one conclusion. You know, when you talk about motion for summary judgment, there's got to be an opposition or something to say, you know, here's why. You know, I mean, like if somebody went there and I had a bad motorcycle and I brought it there and they fixed it or something to that effect, but wouldn't everything you just described be consistent with someone who rides motorcycles and parks it in front of the house? It could be, yes. Well, it could be. That's not enough to warrant evidence to sustain a case, is it? Well, I still think if you look at that in light of the circumstantial evidence, converting a two-car garage to an office, why would you need an office if you weren't going to run a business on your property? And then building a structure that's twice the size of a two-car garage with workshop and storage space along with the traffic of the motorcycles, I think at least should have suggested to the trial court that there was some evidence that there was increased commercial activity. It seems to me that the standard is that genuine issue of material failure is pretty much the same as if this had been a jury trial, let's say, and the plaintiff arrested, motion for direct verdict, and we're behind the trial judge and thinking, okay, what evidence has the plaintiff presented from which this jury could conclude that the plaintiff has prevailed? Is there any other than a suggestion or why would they do this? I mean, the same argument you just made, if I'm the trial court and this had been the trial, I'm adjourning the motion for direct verdict because all you have is supposition and why would they do this, et cetera, which is people build offices. I don't know about my colleagues, but I have a portion of my residence that is kind of an office that I use. How does that turn into running a business? I just don't understand it. Even if that's not the spot, Your Honor, the trial court still had to be concerned with the restrictive covenant argument, which I'd like to get back to, which I've indicated is my main argument. I understand your point on the commercial use, and I was mentioning that in the context that the court may or may not conclude that there was a dispute of material fact. The restrictive covenant issue, I believe, is the issue that's dispositive of this case. There is a restrictive covenant that applies to all properties in this subdivision. I know the court doesn't like extensive reading, but I'm going to quote just a bare portion of that. The covenant certainly indicates that the lots are to be residential lots and that the dwelling is not to exceed two stories in attic space in height and one or two or three car attached or detached garage. Here we have a situation in which the restrictive covenant has said you can have garages of a certain size, and that, my argument, is not ambiguous. This policy right there, is the garage that was built larger than the size permitted? Yes. I think if you examine the record on pages C81 and C82, and there are numerous places where you see diagrams and pictures, it's clear just to observe the building that it's twice the size of a two-car garage, which would exceed the three-car garage requirement of the restrictive covenant. I have a question about the portion of the record that you're citing, too. Photographs and diagrams, were these evidentiary in nature? In other words, were they of such a nature that the trial court could consider them in either support of your summer judgment motion or in opposition to, or were they just in the record relating to other motions? There are several times that they appear in the record relating to other motions, and in that sense the court may not have been able to consider them when it came time for motion for summary judgment. What was there of an evidentiary nature that would establish the dimensions of this garage? It is my recollection that the affidavits on file that were considered by the court in the motion for summary judgment, as well as the picture and photographic evidence of the building and workshop, were available to the court and attested to as part of the motions for summary judgment. So what were the dimensions as set forth in the affidavit? Well, the Clery's affidavit characterized it as a two-car garage plus a workshop. When you say dimensions, I think of feet. I think of distances. Are there any dimensions set forth in the record in support of or in opposition to summary judgment? My recollection is there were pieces of information that were available in the billing permit, in applying for the billing permit, that indicated the dimensions of the shed. I don't have a cite to that at this moment, but I could look that up. But the picture itself, looking at the picture, I tried not to leave a common-sense review of the situation behind me when I reviewed the picture and the evidence when we argued this at the trial court. And it's clear that the building that was constructed is twice the size to accommodate two cars. It has two bays, and you can see that the building is twice that large, plus has a second story, presumably for storage or whatever the Clery's were going to use it for. The other problem the Clery's have, even if this building does not exceed the restrictive covenant, I think that it does, if you use the logic from the vandal log case, which said a two-car garage is a unit that you cannot park or fit a third car in. By way of analogy, a three-car garage in this case would be a building that you can't fit a fourth car in or something to exceed a third car, and clearly you can't. The trial court, I think, appropriately described how, if in a two-car garage, there might be space adjacent to the cars that could accommodate tools and things of that sort, but that doesn't take away from it still being a two-car garage. You're saying that that doesn't accurately reflect what this building actually was. You're saying it was much more than that, something accommodating, maybe yard equipment, garden tools and things of that sort. Sure. It's certainly not a standard residential garage. Stop there for a moment. Yes, sir. Is there any definition in the subdivision dedication and statement of restrictions which sets forth the restriction to one or two or three-car garages? Is there any definition of what a two-car garage is and a three-car garage? The restrictive covenant doesn't set out any dimensions. I assume leaving open the possibility of growth and the change of vehicles over the years. But if we use the van der Locke logic, where van der Locke was evaluating the space, not only in light of an average car but an SUV, it mentioned that still if you exceed the two-car limit in the building or the three-car limit as in this case, it would seem to exceed the easement or the covenant. But the other problem... Would it exceed the covenant if I had three Humvees? Yes. Well, no. No. Not if it was built to accommodate three vehicles. I'd need a much bigger garage than I would if I had three Toyota Wraiths. I'm sorry. I didn't mean to interrupt. No. And this building would accommodate well in excess of three larger vehicles. That's the problem here, that it's so significantly larger, both in terms of height and lateral extension, that it exceeds what could reasonably be interpreted as a three-car garage. But the other problem the appellee has is the two-garage problem. What precedent is it going to set if a landowner or a residential owner can say, I had a garage. I'm in compliance with the restrictive covenant. There was never a problem. Now I'm going to call that garage something else, and I'm going to build another structure. What in the record disputes that the garage door was removed and it was converted to an office and recreation area, and that it had an entrance door that I... Reading it, it would seem the entrance door is a door, not a garage door. Right. And that's what I know that the Claries have attested to. But the problem here is, and I'm not trying to be sarcastic in any way, with that line, what keeps the Claries next year from saying, we're going to make our workshop a family room. We're going to put a pool table or a ping-pong table in it, and we're going to call it something else, and then we're going to build another structure. Why can't we address that if and when it arises? The issue before us is, could they turn the attached garage into a unit of the residence, and that's, as I'm sure you know, as the trial court indicated, that's hardly a unique or even maybe all that unusual development. In my community in Urbana, I drive by at least two residences that have been so modified. So what? It still comes back to the issue of the character of the neighborhood, building a much larger structure than anyone else has or anything in the record would indicate was consistent for the residential neighborhood and taking it in light of the circumstances of the case. I have completed my argument. I'm happy to answer any questions that the panel has in addition to the questions I've attempted to answer this morning. Well, I want to go back to Justice Connacht's question because it seems to me both the trial court but primarily the attorneys in support and opposition to the motion for summary judgment, as this court has written, have a duty to make clear in support of the motion for summary judgment, we're relying on A through J affidavits, exhibits, whatever it might be. In opposition, we're relying on whatever it might be, so that it's clear to us and to the trial court what it is that is before it Mere motion practice preliminary to a motion for summary judgment might or might not be pertinent. If I understand Justice Connacht's question, your response, there is no such indication in this record that you prepared as to what you're relying on for your motion for summary judgment or in opposition? Well, I relied on Ms. Clary's affidavit. I relied on the certified exhibits that exist in terms of the building permit and the application for the building permit and the timing of the building permit. I relied on the Clary's affidavit. Is there a pleading that says, by the way, here are the things that I'm specifically relying upon, Judge, and asking you to consider? I believe those exist in my motion for summary judgment by reference to the record or attachments to the motion. So the photographs that you referred to were set forth in your motion for summary judgment? No, I think in the case of the photographs, I would have referred to places that they already existed in the record as either attachments to affidavits from one side or the other or certified documents. You're specifically asking the court to consider regarding the motion for summary judgment? Yes. Okay. I just wanted to make sure that was part of it. As I recall, sir. Okay. Are there any other questions from the panel? I don't see any. Thank you. Thank you very much. Mr. Freeman. Thank you. May it please the Court, Counsel. I'd like to point out several errors in Plaintiff's reply brief. I would note at page 8 of the reply brief, after the cite to the Vandalat case, it appears as though Plaintiff is referencing the Clary's when he says that the trial court found that the structure violated the governance. Obviously, the trial court in this case did not make that determination. That was at page 8. At page 6, in the context of the Plaintiff's argument with respect to the commercial activity, he argues that there was an increase in motorcycle traffic at the new construction as well as on the property generally. I would suggest to the Court that there is no evidence of any increase in motorcycle traffic. Plaintiff's affidavit herself states that she has seen motorcycle activity, doesn't describe what that activity is, at the new construction. That is the extent of the evidence in this record as to motorcycle activity. Can you, in advance of talking about the restrictive covenant argument, can you tell us what is contained in the record that is of an evidentiary nature that depicts the detached garage? Are there photographs that were attested to by way of an affidavit or attached to a deposition such that the trial court could consider them as evidence? Certainly. Obviously, there are no depositions in the record. The affidavits principally from the clearies, I think, establishes that there is a diagram or a plot of the subject lots of the subdivision. I don't think there are any affidavits which would establish a foundation. Okay. The diagram of the plot of the subdivision is just simply identifying lots. Yes. As to the structure that was built, do we have anything that is of either a photographic in nature or blueprint something that we can look at that is beyond a description in words by way of affidavit that tells us what this structure looked like? I don't believe there are any affidavits laying essentially a foundation for photographs. Okay. How about the building permits? Those were, I believe, attachments to the complaints that were filed, the various amended complaints. I frankly don't think there's a dispute that the building permit was, in fact, issued on February 23, 2011. What I meant was when you apply for that in the city of Mansfield, you say, I'm going to build a structure of this size. Right. That was included in the building permit. Again, I don't know whether other than attachments to the complaints, I'm unaware of any foundational affidavit in the record. With respect to the covenant, Your Honor and Judges, the affidavits of Cleary and Gaines identify this as a three-car garage. As the court was posing questions to counsel, what exactly is a three-car garage? And I think the court correctly identified there are no measurements, no dimensions given in any of the covenants or in any cases which identify what a three-car garage. Justice Kinect, you pointed out, what if you had three Humvees versus three Priuses? The size of the garage, while I think it may have some relevance, the question, I think, really is, as the court in Vandalotte noted, will it hold a fourth car? And on this record, there is absolutely no evidence that it will hold a fourth car. Do you really believe that ought to be the standard? If you follow the Vandalotte case, yes. Well, that's what I'm asking. Yeah. Because the reason I ask is there's a little smart car parked in the parking lot down here that I bet I could get ten of those in my three-car garage. So do I have a ten-car garage? Therein lies the dilemma with saying a car garage, three-car garage, four-car garage. Again, the size of the car has some impact on your consideration as to whether it's a two-, three-, four-, five-, four-, ten-car garage. I would suggest that it's the dimensions, which may give some indication that it's more than a three-car garage or more than a four-car garage, again, the language from Vandalotte. But, again, it's ambiguous. And there's nothing in the record that suggests that this structure, as it's built, violates any of the particular covenants. If you consider that the covenant itself leaves open the room for interpretations or application that the court has just noted. What if the record demonstrated that showed photographs of the garage and they were of evidentiary quality where we could consider them and there were dimensions that were provided as well and it had three garage doors, but then it was four stories, evidence that there were living quarters up above, but the homeowner is saying that's a three-car garage. With the zoning restrictions in place, they don't define what a three-car garage is. I mean, at some point you've got to say, okay, that's not a three-car garage. And I think underlying the Vandalotte case, there was that issue. In that particular case, there was a second story that had a deck or five-fold doors of some sort. And the court concluded that it was, in fact, an extension of the residence. In your example, if you had four stories with the living quarters above it, obviously the character of the building has changed. It's no longer a garage in the sense that anyone might understand it. It's become either a residence or an extension of the residence. And in that case, clearly it's not a garage. I think the court properly noted, or at least questioned counsel, with respect to the idea that there are two garages. The undisputed evidence is that the previous garage has been, it's a one-and-a-half-car garage, not two-car garage. One-and-a-half-car garage has been closed, and it's a home office and a record. It's no longer a garage. Max's point that, gee, well, you know, if that's okay, how about at some point maybe extended family wants to move in, and they turn the detached garage into, what is the term, like the mother-in-law's house or something? Mother-in-law, yeah. Then I think it would raise an issue as to whether it is, again, an extension of the home. It's no longer a garage. You've changed the nature of it. The fact that the garage was a garage at one point, it has been changed. It is now part of the resident. It's no longer a garage. Could they turn that into the mother-in-law residence and then build another garage someplace on the property if there were room? With respect to the new construction? Yeah. That seemed to be his argument about, gee, you know, we're only going to do this. I would, one, I would point out, Judge, the Cleary's property consists of three lots. Theoretically, there could be three homes with three car-detached garages on each lot. I don't know how the structures are placed in respect to each individual lot. But, yes, you could turn it into a home and then build another garage. Well, I think that would violate. With Justice Steigman's example, the zoning restriction only allows for one detached garage. So they couldn't take the existing detached garage, turn it into living quarters, and then build another one because there's only one detached building allowed, right? I think the question would then become does the, I'll call it the new construction, that's been turned into the mother-in-law home, whether that becomes another residence. I think you're changing the character of the building. You're turning it into a residence. And then you analyze it. Does it comport with the covenants and the municipal ordinances with respect to. . . Are the lots surveyed or platted in such a way that there is a portion of the real estate that could be designated, this is a third lot, we're going to sell it to Joe? I don't know how the property was transferred, whether it was all three as one or whether each lot was transferred. But at least as to the way it was originally platted, they have three separate residences. I think, again, Plaintiff argues with respect to the commercial use of the property, he argues that the home office somehow has something to do with the business. I think I would suggest that that's a little bit of a spacious argument. With the advent of computers and desktop computers, everybody's got a place in their home where they have a desktop computer where they take care of their home business, paying bills, managing mail, that sort of thing. I don't think a home office necessarily leads to the conclusion that there's a business being operated out of there. And specifically, as the Court noted, there's no evidence of any transactions of any sort occurring on the property. There's no evidence of any advertising, no evidence of a phone number which would give that address for a business. The reality is Mr. Clear has been operating the business in Champaign for 30 years. As I suggest in my written materials, it would be absurd to think that he's going to pick that business up that's been there for 30 years, move it to a dead-end cul-de-sac in Mansfield, Illinois, and run a business. I think it's been probably three, four years since the suit was filed originally. The business remains in Champaign. It's not been moved in any way, shape, or form. But importantly, Judge, the evidence is that he doesn't. David establishes that he doesn't operate the business out of his home, and there is no contrary evidence. I would suggest that the trial court properly determined that summary judgment was appropriate in that regard. With respect to the building permit, Mr. Cleary's affidavit, Mrs. Cleary's affidavit, establishes that certain activities were begun within six months of the issuance of the building permit. The plaintiff's entire argument from there rests on the argument that the plaintiff, in her affidavit, says that it was started on October 10, 2015. The affidavit utterly fails to establish anything that she saw or which occurred, which would suggest that something was going on on October 10, 2015, really that it started on October 10, 2015. I think the affidavit of Mr. Cleary with the specifics of the activities that were done prior to the expiration of the six-month period established that, in fact, construction did begin within the six-month period and that the rest of the plaintiff's arguments for the fines and fees simply fails on that basis. I note in the plaintiff's reply brief they argue that all the assertions in the complaint are allegations of ultimate fact. I would suggest to the court that we are at a summary judgment stage. The pleadings of ultimate fact has absolutely no relevance to an analysis of genuine disputed facts. The arguments that they make with respect to hydrology, I think I addressed that in my written materials. Clearly, the plaintiff's property is uphill from the defendant's property. They cited no authority that water runs uphill. I would suggest the surface water issue isn't an issue at all. With respect to the groundwater or the subsurface water, they cite no authority for the proposition that there is some problem or they have some cause of action related to the subsurface water. The statute that they actually cite only addresses the removal of subsurface water. It literally has nothing to do with the facts that have been alleged in the complaint. She claims that her view of the lake was somehow obstructed by the new construction, again, complaining of its size. As I submit in my written materials, the plaintiff has cited no authority for the proposition that she has a right or a cause of action for an obstructed view. She tries to suggest that there is somehow an easement or an adverse possession involved. Again, the elements, as I set out, for adverse possession are not even alleged in the complaint. Again, they're merely conclusions on the part of the plaintiff. I thank the court for their time. I would ask that the court confirm summary judgment presented by the trial court. On behalf of the cleries, thank you for your attention. We look forward to the court's ruling. Thank you. Thank you. Mr. Cox, rebuttal argument? Your Honor, I still think the Vanderloeg case is instructive in this. In the absence of a Fourth District case that's directly on point, Vanderloeg can either be persuasive or binding authority. And the Vanderloeg analysis is that, by way of applying to this situation, a four-car garage or basically this would be anything that you could – it would be violating the restrictive covenant if the construction exceeded what would be reasonable for a three-car garage. And I argue that's the case here. Just in terms of clarification, in that case, it was the trial court that indicated it was the number of cars that the building could accommodate that then defines whether it's a two-car garage or three-car garage. It did. And the public court just recited what the trial court had stated. Did the public court ever adopt that as its standard? No. Did it specifically say that's how we will determine if it's a two-car garage or a three-car garage? Not specifically, but it applied it to a very factual similar situation as this case. Does the panel have any other questions for me? I don't see any. I also thank you on behalf of Mrs. Weaver for the consideration of these issues. Okay, thank you. Thank you both. The case will be taken under advisement and a written decision shall issue.